**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAN LU,** | : | **CIVIL ACTION NO. 3:16-CV-2028** |
| **A# 070-903-730,** | : | |
| Petitioner | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **CRAIG A. LOWE,** *et al.*, | : | |
| | : | |
| Respondents: | | |

## MEMORANDUM

Can Lu ("Lu"), presently a detainee of the United States Immigration and Customs Enforcement ("ICE"), incarcerated at the Pike County Prison, Lords Valley, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 on October 6, 2016. (Doc. 1). Respondents filed a response (Doc. 5) to the petition on November 23, 2016. Lu filed his traverse (Doc. 6) on December 7, 2016. Also pending are Lu's Motions (Docs. 9, 12) for a Preliminary Injunction and to Expedite Decision.

For the reasons set forth below, the Motion to Expedite Decision on the petition will be granted, the Motion for a Preliminary Injunction will be denied and the petition will be dismissed without prejudice.

**I.   Background**

Lu is a native and citizen of China who entered the United States at an unknown time and place and without inspection by an immigration officer. (Doc. 5-1, p. 7). An Immigration Judge ("IJ") granted asylum on April 28, 2000; Lu adjusted his status to a Lawful Permanent Resident on either July 31, 2006, or July 31, 2007, under section 209(b) of

the Immigration and Nationality Act, ("INA"), as amended. (Doc. 5-1, pp. 5, 7).

On April 22, 2015, the United States Department of Homeland Security initiated proceedings against Lu *via* a Notice to Appear informing him that he was subject to removal from the United States pursuant to Section 237(a)(2)(A)(iii) of the INA based on his aggravated felony conviction, Theft by Unlawful Taking, entered in the Court of Common Pleas of Philadelphia County, Pennsylvania on November 20, 2014. (Id. at pp. 3, 5).

ICE took Lu into custody on December 16, 2015, following service of his Court of Common Pleas of Philadelphia County sentence. (Doc. 1, p. 2; Doc. 5-1, p. 7). On March 17, 2016, an IJ ordered Lu removed from the United States to China. (Id. ; Id.). Lu waived his right to appeal. (Doc. 5-1, p. 6). The removal order is therefore administratively final.

On June 15, 2016, and October 12, 2016, Lu received decisions to continue his detention. (Id. at 7-9). In the October decision, ICE advised Lu that it was working with the government of China to secure a travel document and that a travel document was expected. (Id. at 9). Michael Loesch, the deportation officer with the Enforcement and Removal Operations ("ERO") division of ICE who is managing the removal efforts, indicates that Lu's case is a "priority 1" removal case due to his criminal history. (Id. at 12, ¶ 3). Loesch began removal efforts on March 29, 2016, and ICE submitted the travel document request to the Chinese consulate on April 18, 2016; status inquiries are made twice a month. (Id. at ¶¶ 4, 7). Loesch represents that, in his experience, "the government of China does accept the repatriation of its citizens. However, this process is time consuming." (Id. at ¶ 9). According to Fiscal Year 2015 statistics maintained by ICE, 386 Chinese citizens were

removed to the People's Republic of China in that year.  (Doc. 5-1, p. 11).

Lu challenges his "prolonged detention as unconstitutional, unreasonable and well-beyond the limits to the statutes under which he is now detained. . . ."  (Doc. 1, p. 1).  He also takes issue with the due process afforded him in the context of the custody review hearings.  (Id. at pp. 6-7).

## II. Discussion

Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. § 1231.  Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory.  Section 1231(a)(1)(B) provides the following:

> The removal period begins to run on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. §1231.  At the conclusion of the ninety-day period, the alien may be held in continued detention, or may be released under continued supervision.  8 U.S.C. §§ 1231(a)(3) & ( 6). The statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States.  It does not permit indefinite detention."  Zadvydas v. Davis, 533 U.S. 678, 689 (2001).  "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id. at

3

699.  To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention."  Id. at 701.

Following Zadvydas, regulations were promulgated to meet the criteria established by the Supreme Court.  See 8 C.F.R. § 241.4.  Prior to the expiration of the mandatory ninety-day removal period, the district director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period.  8 C.F.R. § 241.4(k)(1)(i).  When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the Headquarters Post Order Detention Unit ("HQPDU") for further custody review.  8 C.F.R. § 241.4(k)(1)(ii).  Once jurisdiction is transferred, an eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that he will be removed in the reasonably foreseeable future.  8 C.F.R. § 241.13(d)(1).

The Zadvydas court held that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," stating that the alien petitioner has the burden of "provid[ing] good reason to believe that there is no [such] likelihood" before the government respondents would be required to provide rebuttal evidence.  See Zadvydas, 533 U.S. at 701.  See also Encarnacion-Mendez v. Attorney General of U.S., 176 F. App'x 251, 254 (3d Cir. 2006).  As the Third Circuit explained, "[o]nce the six-month period has passed, the burden is on the alien to 'provide [ ] good reason to believe that there is no significant likelihood of removal in the reasonably

4

foreseeable future . . . ' Zadvydas v. Davis, 533 U.S. 678, 701 (2001). Only then does the burden shift to the Government, which 'must respond with evidence sufficient to rebut that showing.' Id." Barenboy v. Attorney General of U.S., 160 F. App'x. 258, 261 n. 2 (3d Cir. 2005).

If at the conclusion of the six-month period the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. Not every alien must be released after six months. An alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

In the matter *sub judice*, the presumptively reasonable six month period began running on March 17, 2016, the date the order of removal became administratively final. The six-month period has recently expired, and ICE has failed to remove Lu. He argues that "[a]ssuming a determination based on 'appearances' and 'expecting' to obtain a travel document from a country that does NOT issue them and receiving a proper 'medical treatment', does not justify indefinite detention. 'Expecting to have Petitioner removed from the U.S. in the foreseeable future is just speculation and Petitioner's prolonged detention can not [sic] be reasonably justified based on finite guess." (Doc. 1, p. 7). However, Lu has not presented evidence that there is no significant likelihood of his removal in the reasonably foreseeable future as required by Zadvydas, 533 U.S. at 701. Consequently, he has not shown that his detention is statutorily unauthorized or violates due process. See, e.g., Joseph

v. United States, 127 F. App'x 79, 81 (3d Cir. 2005) (affirming dismissal of § 2241 petition challenging detention pursuant to § 1231(a)(6) because petitioner did not provide "good reason" to believe there is no likelihood of removal); Soberanes v. Comfort, 388 F.3d 1305 (10th Cir. 2004)(same). Moreover, his wholly unsupported statement, that China does not issue travel documents, is directly contradicted by the statistics proffered by ICE, which indicate that Chine issued 386 travel documents in Fiscal Year 2015. (Doc. 5-1, p. 11). Accordingly, at this time, this claim must be dismissed

Significantly, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701. Accordingly, the dismissal is without prejudice to the filing of a new § 2241 petition, in a new case), in the event that Lu is able to allege facts that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. See Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (recognizing that "[b]ecause circumstances may ultimately change in [petitioner's] situation, we affirm the dismissal [of his habeas petition] without prejudice to [his] ability to file a new § 2241 petition in the future").[1]

Lu also challenges the lack of a hearing on his custody review determinations. This

---

[1] Lu also has the option to submit a new request for review directly with ICE. See 8 C.F.R. § 241.13(d)(1) ("An eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. The alien may submit whatever documentation to the HQPDU he or she wishes in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future").

claim must also be dismissed.  First, the regulations pertaining to post-removal-period custody reviews do not require a hearing or an interview prior to the issuance of a decision. See 8 C.F.R. §§ 241.4(h)(1), 241.13(e), (f), (g).  Further, "this claim lacks legal merit because, under the rationale of Zadvydas, an alien is not entitled to a hearing unless he has been detained beyond the presumptively reasonable six month period and he alleges facts showing that there is no significant likelihood of removal in the reasonably foreseeable future."  Hlimi v. Holder, Nos. 13-3210, 13-3691, 2013 WL 4500324, at *4 (D.N.J. Aug.20, 2013) (citing Zadvydas, 533 U.S. at 701; Wilson v. Hendricks, No. 12-7315, 2013 WL 324743, at *2 (D.N.J. Jan.25, 2013)).

### III.   Conclusion

Based on the foregoing, the Motion (Doc. 12) to Expedite Decision will be granted, the Motion (Doc. 9) for a Preliminary Injunction will be denied, and the petition for writ of habeas corpus will be dismissed without prejudice.

An appropriate Order follows.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:   January 24, 2017